1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                         NORTHERN DISTRICT OF CALIFORNIA

10

11   REY REY PRODUCE SFO, INC.,   )
                                  )
12              Plaintiff(s),     )       No. C05-4504 BZ
                                  )
13       v.                       )       **AMENDED REPORT AND**
                                  )       **RECOMMENDATION ON**
14   M&M PRODUCE AND FOOD SERVICE )       **PLAINTIFF'S MOTION FOR**
     SUPPLIES, INC., FELIPE CEJA  )       **DEFAULT JUDGMENT**
15   and CHRISTIAN CEJA,          )
                                  )
16              Defendant(s).     )
     ─────────────────────────────)
17

18       Plaintiff's motion for entry of default judgment against

19   defendants M&M Produce and Food Service Supplies, Inc.

20   ("M&M"), Felipe Ceja and Christian Ceja came on for hearing on

21   April 19, 2006, at 10:00 a.m.  Christian Ceja appeared on

22   April 19, 2006, and the motion was continued to July 5, 2006,

23   to allow the parties to exchange information and discuss a

24   resolution.  The parties did not reach a resolution and

25   plaintiff's motion came on for hearing again on July 5, 2006.

26   Defendants did not appear and did not request that their

27   default be set aside.  As defendants have not consented to

28   magistrate judge jurisdiction, the following is a report and

                                  1

1  recommendation for entry of default judgment.

2      On November 4, 2005, plaintiff filed a complaint for

3  violations of the Perishable Agricultural Commodities Act

4  ("PACA") under 7 U.S.C. §499e, *et seq*.  Plaintiff alleged that

5  it sold and shipped $8,316.80 in perishable agricultural

6  commodities to defendants for which they have failed and

7  refused to pay.  Complaint ("Compl.") ¶¶ 11, 13.

8      Plaintiff served defendants with a copy of the complaint

9  on November 21, 2005.  Defendants failed to answer the

10  complaint or otherwise defend the action.  On December 22,

11  2005, the Clerk of this court entered defendants' default

12  under Rule 55(a).  By their default, defendants are deemed to

13  have admitted the well-pled averments of the complaint except

14  those as to the amount of damages.  See Fed. R. Civ. P. 8(d).

15      A court may not enter a default judgment against an

16  unrepresented minor, an incompetent person, or a person in

17  military service.  See Fed. R. Civ. P. 55(b)(2); 50 App.

18  U.S.C. § 521.  Plaintiff submitted the declaration of its

19  attorney who stated on information and belief that none of the

20  defendants are infants or incompetent persons or in military

21  service.  See Declaration of Bart M. Botta ¶ 12 ("Botta

22  Decl.").  I reminded plaintiff in my Scheduling Order that

23  compliance with the Soldiers' and Sailors' Civil Relief Act of

24  1940 may not be satisfied on information and belief, but at

25  the April 19, 2006 hearing, it was apparent that Christian

26  Ceja is not a minor, an incompetent person or in military

27  service, and he did not raise this concern on behalf of his

28  father.  The corporate defendant, M&M, is not subject to this

2

1 | limitation.

2 |     Pursuant to Rule 55(b)(2), a court may enter a default

3 | judgment against a party against whom default has been

4 | entered.  The decision to grant or deny a default judgment

5 | under Rule 55(b) is within the discretion of the court.  Eitel

6 | v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Having

7 | reviewed the complaint, I find that the allegations are

8 | sufficiently well-pled to support default judgment.

9 |     PACA makes it unlawful for any commission merchant,

10 | dealer, or broker in connection with any transaction in

11 | interstate or foreign commerce to "fail or refuse truly and

12 | correctly to account and make full payment promptly in respect

13 | of any transaction in any [perishable commodity] to the person

14 | with whom such transaction is had" or "fail to maintain the

15 | trust as required under section 499e(c)."  7 U.S.C. § 499b(4).

16 | Section 499e(c) requires a trustee to hold any commodities and

17 | receivables or proceeds from the sale of such commodities in

18 | trust for the benefit of all unpaid suppliers or sellers until

19 | full payment of the sums owing have been received by the

20 | supplier or seller.  7 U.S.C. §499e(c).  Under PACA, a

21 | commission merchant, dealer, or broker that violates any

22 | provision of section 449b shall be liable for the full amount

23 | of damages sustained in consequence of such violation.  7

24 | U.S.C. § 499e(a).  "'PACA liability attaches first to the

25 | licensed seller of perishable agricultural commodities.  If

26 | the seller's assets are insufficient to satisfy the liability,

27 | others may be found secondarily liable if they had some role

28 | in causing the corporate trustee to commit the breach of

3

1   trust.'"   Sunkist Growers, Inc., v. Fisher, 104 F.3d 280, 283

2   (9th Cir. 1997)(citing Shepard v. K.B. Fruit & Vegetable,

3   Inc., 868 F. Supp 703, 706 (E.D. Pa. 1994)).  As such,

4   "individual shareholders, officers, or directors of a

5   corporation who are in a position to control PACA trust

6   assets, and who breach their fiduciary duty to preserve those

7   assets, may be held personally liable under the Act."

8   Sunkist, 104 F.3d at 283.  PACA also requires the unpaid

9   supplier, seller, or agent to give written notice of intent to

10  preserve the benefits of the trust.  7 U.S.C. §499e(c)(3),(4).

11       As a threshold matter, plaintiff alleges that defendants

12  were engaged in handling produce in interstate and/or foreign

13  commerce as dealers and/or commission merchants subject to

14  PACA.  Compl. ¶ 9.  According to the complaint, defendants

15  meet the statutory definition of trustee under PACA.  Compl.

16  ¶¶ 9, 21.  Plaintiff alleges on information and belief that

17  Felipe Ceja and Christian Ceja were officers, directors,

18  and/or shareholders of M&M and were statutory trustees under

19  PACA in a position to control the trust assets that are the

20  subject of the action.  Compl. ¶¶ 5-8.  Defendants allegedly

21  failed to maintain the trust assets for the satisfaction of

22  their obligation to plaintiff and continue to fail and refuse

23  to make full payment.  Compl. ¶¶ 21-22, 25; Declaration of

24  Manuel Reynoso ¶ 8 ("Reynoso Decl.").  Plaintiff gave written

25  notice of intent to preserve the benefits of the trust in its

26  invoices to defendants.  Id. at Exh. 1.  Plaintiff has

27  performed and fulfilled all duties required to preserve its

28  trust benefits under PACA.  Compl. ¶¶ 14, 20.  As plaintiff

4

1    has satisfied the statutory requirements under PACA, it is

2    entitled to relief for all unpaid invoices.

3        In plaintiff's motion for default judgment, plaintiff

4    seeks $8,316.80 in damages from defendants.  Plaintiff has the

5    burden of proving damages through testimony or written

6    declaration or affidavit.  According to the complaint, and

7    corroborated by the invoices and statements attached to the

8    declaration of Manuel Reynoso, defendants failed to pay

9    plaintiff $8,316.80.  See Compl. ¶ 11; Reynoso Decl.; Exhs. 1-

10   3.  Having reviewed the complaint, the motion for default

11   judgment, and the declaration and exhibits submitted in

12   support of the motion, I find that plaintiff has established

13   that defendants are liable for this amount.  I recommend that

14   plaintiff recover $8,316.80 from defendants.

15       Plaintiff also requests $866.37 in attorney's fees and

16   costs incurred in connection with this action.  See Botta

17   Decl. ¶ 14.  A district court has limited authority to grant

18   attorney's fees to PACA claimants.  Middle Mountain Land and

19   Produce Inc. v. Sound Commodities Inc., 307 F.3d 1220, 1225

20   (9th Cir. 2002).  While an express statutory basis for

21   attorney's fees does not exist under PACA, the Ninth Circuit

22   has found attorney's fees proper in two situations:  first,

23   when an enforceable contract exists giving the plaintiff a

24   right to attorney's fees, id. at 1224-25, and second, when a

25   PACA claimant's litigation efforts result in a common fund for

26   the benefit of a group of claimants.  In re Milton Poulos,

27   Inc., 947 F.2d 1351, 1353 (9th Cir. 1991)(citing Boeing Co. v.

28   Van Gemert, 444 U.S. 472, 478 (1980)("noting that it is well-

5

1  settled 'that a litigant or a lawyer who recovers a common

2  fund for the benefit of persons other than himself or his

3  client is entitled to a reasonable attorney's fee from the

4  fund as a whole'")).  Plaintiff has not alleged nor does it

5  contend that its litigation efforts will result in a common

6  fund.  Plaintiff instead argues that the following language

7  printed at the bottom of its invoices constitutes a contract

8  entitling it to attorney's fees:  "Terms:  PACA a service

9  charge of 1 ½% per month at the annual percentage rate of 18%

10  will be charged on all accounts not paid within thirty days.

11  Buyer agrees to pay reasonable attorney's fees if collection

12  in [sic] necessary."  Reynoso Decl., Exh. 1.

13       To begin, although some districts do not include

14  attorney's fees and costs in the awards covered under PACA,[1]

15  the Ninth Circuit has ruled that the language "in connection

16  with" in the statute authorizes "not only the price of the

17  perishable agricultural commodities but also additional

18  related expenses, including contractual rights to attorneys'

19  fees and interest, in a PACA claim."  Middle Mountain, 307

20  F.3d at 1222-23.  The question then centers around whether

21  plaintiff has shown that it is due attorney's fees pursuant to

22  a contract.  The Ninth Circuit in Middle Mountain did not

23  decide the issue whether language similar to the "Terms"

24  language included in the invoices constituted a contract,

25  _____

26  [1]    The Southern District of New York declined to follow
Middle Mountain in Nobles-Collier, Inc. v. Hunts Point Tomato
Co., Inc., 2004 WL 102756, at * 2 (S.D.N.Y Jan. 22, 2004),
27  while the Eleventh Circuit reasoned and concluded in Country
Best v. Christopher Ranch, LLC, 361 F.3d 629, 632-33 (11th Cir.
28  2004) as the Ninth Circuit did in Middle Mountain.

1   remanding to the district court.

2       The formation of this contract is governed by California

3   law.   Comerica Bank v. Whitehall Specialties, Inc., 352

4   F.Supp.2d 1077, 1081 (C.D. Cal. 2004).   The California version

5   of the Uniform Commercial Code applies to contracts for the

6   sale of goods.   Cal. Com. Code § 2102.   "A contract for sale

7   of goods may be made in any manner sufficient to show

8   agreement, including conduct by both parties which recognizes

9   the existence of such a contract."   Cal. Com. Code § 2204(1).

10  Multiple invoices containing the "Terms" language and

11  continued acceptance of the goods by defendants without any

12  objections constitute a contract in this case.   Reynoso Decl.

13  ¶¶ 11-12.   The attorney's fees provision in the invoices

14  creates a contractual right binding defendants, and plaintiff

15  is therefore entitled to properly documented attorney's fees

16  necessarily incurred in collection.   See Weis-Buy Services,

17  Inc. v. Paglia, 307 F.Supp.2d 682, 694 (W.D. Pa.

18  2004)(awarding attorney's fees and interest because it was

19  undisputed that the language in the invoices created a

20  contractual right), *rev'd on other grounds*.

21      Plaintiff's counsel has personal knowledge of the

22  attorney's fees accrued and declares under penalty of perjury

23  that $866.37 has been billed on this matter.   Botta Decl. ¶

24  14.   This amount seems reasonable and necessary for plaintiff

25  to obtain a default judgment against elusive defendants.   I

26  therefore recommend that plaintiff recover $866.37.

27      Finally, plaintiff requests pre- and post-judgment

28  interest at 18%, requesting $2,006.80 in pre-judgment interest

1    and post-judgment interest accrual at 18%.  Reynoso Decl.,

2    Exh. 3.  Similar to its attorney's fees argument, plaintiff

3    contends that it is entitled to pre-judgment interest because

4    the "Terms" language printed at the bottom of its invoices

5    creates a contract.  Just as PACA authorizes attorney's fees,

6    it also authorizes interest to plaintiff if there is a

7    contract that does so.  "[A] district court has broad

8    discretion to award prejudgment interest to PACA claimants

9    under 7 U.S.C. § 499e(c)(2)."  <u>Middle Mountain</u>, 307 F.3d at

10   1226.  Pursuant to statute, plaintiff is entitled to interest

11   on any monetary judgment in a civil case recovered in a

12   district court from the date of entry of the judgment.

13   Although normally interest would accrue at the legal rate,

14   because the invoices created a contract, the interest rate of

15   18% on unpaid accounts agreed to by the parties is the correct

16   rate to apply.  <u>Citicorp Real Estate, Inc. v. Smith</u>, 155 F.3d

17   1097, 1108 (9th Cir. 1998)("affirm[ing] the district court's

18   grant of post-judgment interest based upon the mutually agreed

19   upon contract rate").

20       For the foregoing reasons, I recommend that judgment be

21   entered against defendants for $8,316.80 in damages, plus

22   attorney's fees and costs of $866.37, pre-judgment interest of

23   $2,006.80 and post-judgment interest at a rate of 18%.

24   Dated: July 5, 2006

25                              _____
                                        Bernard Zimmerman
26                               United States Magistrate Judge

27
     G:\BZALL\-BZCASES\REY REY\AMENDED.DEF.JUDG.ORD.2.wpd
28

                                  8